PEOPLE *ex rel* TALLANT & WILDE *v.* FOGG, Treasurer
of Contra Costa County.

A *mandamus* will not lie against a County Treasurer to compel him to pay interest
    due on county bonds.
The Treasurer is not an independent officer in respect to his charge and control of the
    county funds ; but in his disbursements, acts on the warrants of the Auditor, on
    claims audited by the Board of Supervisors.
In such a case, the Treasurer is not, in respect to interest money, placed in any direct
    relation with the creditors ; and he is not intrusted with a mere ministerial duty of
    holding it or paying it to them on demand.

Appeal from the District Court of the Seventh Judicial District,
County of Contra Costa.

This was an application for a writ of *mandamus* against the Treas-
urer of the County of Contra Costa.   The application is based upon
the following grounds :

The County of Contra Costa, having a large outstanding indebted-
ness in the shape of warrants drawn on the Treasurer, the Legislature
of this State, on the fourteenth day of February, 1855, passed an
Act to fund such indebtedness, entitled " An Act to fund the Debts of
Contra Costa County, and to provide for the payment of the same."

Pursuant to the Act, such warrants were presented to Commission-
ers therein provided for, and by them examined and determined to be
true and correct warrants.   That the said warrants were delivered up
and surrendered by the holders of them ; and bonds with coupons
annexed thereto were thereupon issued, as directed by the said Act,
and delivered to the holders of the said warrants as a substitute
therefor.

The interest, for the payment of which the coupons were annexed,
was made payable on the first days of January and July in each year,
at the city of New York, without naming any particular place in that
city at which, or any person by whom, to be paid.

By the 9th section of that Act, in addition to the ordinary taxes,
a special tax, to be called the interest tax, of thirty cents on each one
hundred dollars of taxable property, was directed to be collected in
the same manner with ordinary revenues of said county, for the pay-
ment of the interest upon the said bonds; *which tax was to be paid to
the Treasurer of the county.*

On the fourteenth of April, 1858, there was in the hands of the defendant, as Treasurer, about $3,000 of this tax.  The relators were then, and still are, the holders of a large amount of said bonds, upon which there was then due for interest the sum of $3,100, and for which they then held coupons for that amount.  On that day they presented such coupons to the defendant, at his office in said county, and demanded from him payment of the same, or so much of them as the interest fund or tax in his hands for that purpose would pay; which the defendant then and there refused to do.

It further appears, that the interest on the said bonds had been paid up to January 1st, 1856, in the city of New York; but all the interest accruing and due on the said bonds on the first of July, 1856, and since that time, has not been paid; nor have any funds been sent to that city for the payment of such interest, nor any arrangement there made for such payment.

The writ was denied by the Court below, and the relators appealed to this Court.

*Currey & Reynolds* for Appellants.

I.   It is objected by the defendant that, as County Treasurer, he is not authorized to apply such funds to the payment of the coupons, or to the interest upon the bonds, until the Board of Supervisors shall have first made arrangements for such payment; and then, only upon the warrant of the County Auditor, or the order of the Board of Supervisors.

This objection involves the construction of the Funding Act of 1855, (Laws of 1855, page 9) under which these bonds and coupons were issued.

The bonds issued under that Act were founded upon warrants previously drawn by the Auditor of the county upon the Treasurer, which were then an existing and outstanding indebtedness against the county; and which the Treasurer was bound to pay on demand, without further action by any officer or Board of the county.  He was the only officer who could pay them, or upon whom any demand could be made by the holders of them for payment.

The Act for funding this indebtedness was a proposition on the

People *v.* Fogg.

part of the county to the holders of these warrants to substitute bonds in their place, with certain conditions and covenants. When the holder of the warrants accepted the proposition, it then became a contract between the parties, binding upon both. Among the conditions, the time of payment of the principal was to be extended to the year 1870, and the interest to be paid on the first days of January and July in each and every year. There are no terms of the Act, or stipulation in the contract, for the exchange of these securities, by which the holders of the warrants were to relinquish any of their former rights. The warrants with interest were to be paid out of the general fund, on demand by the Treasurer. The interest upon the bonds is to be paid at fixed periods out of a *particular* fund, expressly created and to be applied by the Act and the terms of the contract for that purpose. The holder of the warrants received payment directly from the Treasurer, and looked only to him for such payment. That right has never been relinquished by him in the exchange under the Act; and he has, therefore, the right to require the payment of his interest upon his bonds from the same direct source and from the same officer, especially when that officer is made and is, in fact, the only legal custodian of that fund, as of all other funds belonging to the county.

It is true, the Act of 1855 does not in express terms direct who shall pay the interest upon the bonds. The Treasurer is to receive and pay out all the moneys of the county. (Wood's Dig., p. 713, art. 3,421.) The 9th section of the Act of 1855 requires that the tax constituting the interest fund shall, when collected, be immediately paid to the Treasurer, to be by him applied to the payment of the interest on the bonds. This officer was required by law to pay the warrants on their presentment, which were his authority for such payment. That officer then being the legal receiver, and the only officer authorized to pay out any of the moneys of the county, was bound to pay the interest on the bonds, on the holder presenting to him the coupons, which are also his authority for such payment.

That the Treasurer must pay this interest upon the presentment of the coupons to him, is further made clear from the 4th section of the Act. That section declares that the Treasurer *shall cancel* the cou-

pons *on their being paid.*    Now, if he do not pay them, how is he to know they are paid, or to have their possession, so as to cancel them ? If the County Judge or any other officer were to pay them, that officer would have the possession of them; and then, in that event, the Act would have directed the officer paying and having their possession to cancel them.

But it is contended on the part of the defendant, that by the 10th section of the Act of 1855, the appellants should have first applied to the Supervisors; and that payment of the coupons could only be made upon their warrant.

This position we deny, and insist that it is against every fair construction of the Act.

If it requires a warrant from the Supervisors, on whom shall it be drawn, or to whom shall it be payable ?    Certainly not on the Treasurer to give him power to pay, for that power is conferred on him by his general duties and powers as Treasurer.    He does not require it to authorize him to pay the coupons, if he be the proper officer to pay ; because the coupons themselves are his authority to pay under the Act of 1855, they being a substitute and in the place of the warrants which were payable on presentment, without any further warrant or direction from any source.

On a careful examination of the Act of 1855, it will be found that the Treasurer is the only person to pay these coupons, and that he must pay them to the holder on presentment and demand of payment from the interest fund in his hands, without any further directions or authority from any other officer or Board of the county.

The first part of section 10 of the Act directs that the Supervisors shall make arrangements for the payment of the interest ; and the exercise of the power so conferred upon them depends upon certain conditions ; and those conditions, which set in operation these powers, can only exist when the tax authorized and directed by the ninth section of the Act is first raised, and is insufficient.    By that section, the tax raised and constituting this interest fund is to be paid to the Treasurer, and by him applied to the payment of the coupons ; and in the event that fund is insufficient, then the Supervisors are to make the arrangements directed in the tenth section ; then the conditions exist

People *v*. Fogg.

to set in operation the powers of the Supervisors under that Act. Therefore, then, under the tenth section :·

1. The Supervisors are, sixty days before the interest becomes due, to see if there be sufficient of the interest fund in the hands of the Treasurer to pay such interest. If there be, then they have nothing further to do ; if not, then they are to make arrangements to have sufficient in that fund for that purpose, and that section points out the way for those officers to proceed.

2. It will be perceived that there are different funds belonging to the county, which are distinct and separate, one from the other, and created for different objects ; and so to be kept and disbursed by the Treasurer, although that Treasurer may be one and the same person ; and therefore, that officer is required to keep the interest fund wholly separate and distinct from the general fund, in the same manner as if such fund were kept by a different officer or person.

If, therefore, the Supervisors on examination find that the interest fund in the hands of the Treasurer is insufficient to meet the interest on the bonds, they are then required to draw their warrant on the Treasurer of the general fund for such sum as will supply the deficiency of the interest fund ; and it is the duty of the Treasurer of the general fund to pay such warrant; that is, as the Treasurer of the general fund, he must, upon the authority of that warrant, transfer the amount of such warrant from the general fund to the interest fund for the payment of such interest. But yet, as the Treasurer of the county, and general custodian of all the moneys of the county, he still holds the same money, it only being transferred from one to the other fund, as required by law.

3. In the event that both of those funds prove inadequate to pay the interest, then the Supervisors are to make such contracts and arrangements, in the name and behalf of and for said county, as may be necessary for the payment of said interest, and the *protection of the faith of the said county*. By this power they may loan the money, or by any other legitimate means may procure the necessary amount to provide for the deficiency of this interest fund, and protect the faith of the county ; and when so procured and provided for, the amount must be paid to the Treasurer ; and no other officer by any law is

authorized to have the custody of this, or of any other money of the county, or to pay out or disburse them for any purpose.

The respondent's counsel say that : "It is made the duty of the Supervisors to have first drawn from the County Treasurer all the money in the interest fund to meet the maturing coupons."

The Act nowhere so declares. The directions in the Act to the Supervisors first to draw their warrant, are contained only in the proviso at the end of the tenth section, which is as follows :

"*Provided*, That said County Judge (amended By-laws, 1855, p. 211) shall have first drawn from the County Treasurer such sums as may be in the County Treasury subject to and provided for the payment of said interest by the provisions of this Act."

This proviso applies only to the last clause of that section ; to that part which authorizes and empowers the Supervisors to make contracts and arrangements for the protection of the faith of the county, in the event that the interest fund and general fund shall be insufficient. This proviso was added by the Legislature to prohibit them from loaning or otherwise pledging the credit of the county, until they had first exhausted the interest fund and general fund for the payment of the interest ; and only in the event that those funds were insufficient, could they proceed to raise any money by loan or contract.

*W. W. Theobalds* for Respondent.

As against the County Treasurer, this writ of *mandamus* is unauthorized by law and misdirected. "This writ," says Blackstone, vol. 3d, p. 110, Comm., "issues in all cases where the party hath a right to have anything done, and hath *no other specific means* of compelling its performance." It is, in its nature, "a command, directed to any person, corporation or Court, requiring some *particular thing* which *appertains* to their *office and duty*," and which is "consonant to right and justice." It issues, says our Practice Act, sections 467 and 468, "to compel the performance of an act which the law specially enjoins as a *duty* resulting from an *office, trust* or *station*," and "in all cases where there is not a plain, speedy and adequate remedy in the *ordinary* course of law." It only lies where there is a "*specific legal right*, and *no specific legal remedy*." People *v.* Olds, 3 Cal. Rep., p.

People *v.* Fogg.

171, and cases there cited, particularly the full note in Fish *v.* Weatherwax, 2d Johnson's New York Cases.    Officers vested with *discretionary* powers can be forced *to act*, but not directed *how* to *act*.    Mere *ministerial* agents can only be compelled to do *specific legal duties*. And the right to demand their performance must be complete and perfect, not inchoate.    If there is any other remedy, by *action* or *otherwise*, or any other act or acts or conditions precedent to be performed, these modes and means must first be tried before this writ can issue and compel the performance of a particular act by a subordinate ministerial officer.    Only on failure of all other means and remedies, and on the due fulfillment of all conditions precedent, can this writ be legitimately employed.    It is purely an exceptional, supplementary and residuary remedy to prevent " a failure of justice and defect of police." As authorities, see cases just cited, and People *v.* Trustees of Brooklyn, 1 Wendall, p. 318 ; Boyce *v.* Russell, 2 Cowen, p. 444 ; and People *v.* Bell, 4 Cal. Rep., pp. 178 and 179.    Before this writ issued in this case, there should have preceded it the due performance of all the conditions of the law merchant, of the law under which appellants claim, and of the contract on the face of the coupons.    The Treasurer is the receiving and disbursing officer of the funds of the county ; but only as a *mere ministerial agent* and *special depository, under* the *orders* and *warrants* of the *Supervisors* and *Auditor*.    (Wood's Digest, p. 713, sec. 6, and pp. 715 and 716, sec. 1, of Act of 1857.) The direction to the Treasurer to pay *on order* or *warrant* excludes his right to pay *without order* or *warrant*.    Such is the *general law* that prescribes his mode of action, and the duties of his office.    But the *special law* that defines what he is to do, as to this claim, and fixes the rights and duties of the coupon-holders, as well as those of the Supervisors, and binds them all, being at once the contract and the law of the contract, *viz :* the Act of February 14th, 1855, obligates the Treasurer, in section 13, to follow precisely and only the mode pointed out in said law—and, while in section 9 it appropriates the interest fund to the coupon-holders, prescribes in section 10 prior duties upon the County Judge, or, as amended by Act of April 30th, 1855, upon the Board of Supervisors, before the Treasurer can be compelled to act.    These prerequisites to be observed under the general

law and under the special law of this case are conditions precedent to the Treasurer's action, and especially to his enforced action by this writ.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

We have felt a strong disposition to reverse this case, and give the relator the relief he seeks; for, upon the transcript, it seems eminently due, as well to the relator as the character of the County of Contra Costa, that the interest on the bonds of the county should be paid according to the contract. But we are unable to see how we can do this consistently with law.

The remedy of *mandamus* against the Treasurer rests upon the idea that he has the control of this money, and is merely charged with the ministerial duty of paying it out to the holders of these coupons on demand. But this is not so. By the Act of 1855, " to Fund the Debt of Contra Costa County, and to provide for the payment of the same," (Acts of 1855, p. 9) it is provided:

" SEC. 10. It shall be the duty of the County Judge of said County of Contra Costa, to make certain arrangements for the payment of the interest on said bonds when the same shall fall due, at least sixty days before the time of payment; and in the event that the said interest fund is insufficient, the said County Judge shall draw a warrant on the County Treasurer of Contra Costa County on the general fund of said county for such purpose, and said County Treasurer shall forthwith pay such warrant; and in the event that these funds prove inadequate, the said County Judge is hereby authorized, empowered and required to make such contracts and arrangements in the name, behalf, and for said county as may be necessary for the payment of said interest, and the protection of the faith of the County of Contra Costa; *provided,* that said County Judge shall have first drawn from the County Treasurer such sums as may be in the County Treasury subject to, and provided for, the payment of said interest by the provisions of this Act."

" SEC. 13. This Act shall take effect from and after its passage, and it shall not be lawful for the County Treasurer to pay or liquidate any of the indebtedness of said County of Contra Costa, which occurred

prior to the first day of February, 1855, in any other manner than herein provided."

By an amendatory Act, passed February 14th, 1855, (p. 211) and before, so far as appears, any action of the creditors under the first statute, (sec. 1) it is declared that section tenth of said Act shall read as follows: "It shall be the duty of the Board of Supervisors of Contra Costa County to make certain arrangements for the payment of the interest on said bonds, when the same shall fall due, at least sixty days before the time of payment: and in the event that the said interest fund is insufficient, the Board of Supervisors shall draw a warrant on the County Treasurer of Contra Costa County, on the general fund of said county, for such purposes; and said County Treasurer shall forthwith pay such warrant; and in the event that those funds prove inadequate, the Board of Supervisors is hereby authorized, empowered and required to make such contract and agreements in the name, behalf, and for said county, as may be necessary for the payment of said interest, and the protection of the faith of the County of Contra Costa; *provided*, that the said Board of Supervisors shall have first drawn from the County Treasurer such sums as may be in the County Treasury, subject to and provided for the payment of said interest by the provisions of said Act."

By the general law (Wood's Digest, 713–716) the Treasurer is not an independent officer in respect to his charge and control of the county funds, but, in his disbursements, acts on the warrants of the Auditor on claims audited by the Board of Supervisors. Leaving out of consideration, therefore, the Act of 1858, it sufficiently appears that the Treasurer is not, in respect to this interest money, placed in any direct relation with the creditors, and that he is not trusted with a mere ministerial act of holding it for or paying it to them on demand. It follows, therefore, that a writ of *mandamus* directed to the Treasurer is not the proper remedy. (4 Cal. 178–9.)

The judgment is affirmed.